

|  |  |
|---|---|
|  | **U.S. Department of Justice** |
|  | *Joshua S. Levy* |
|  | *Acting United States Attorney* |
|  | *District of Massachusetts* |

| | |
|---|---|
| *Main Reception: (617) 748-3100* | *John Joseph Moakley United States Courthouse*<br>*1 Courthouse Way*<br>*Suite 9200*<br>*Boston, Massachusetts 02210* |

October 17, 2024

Zachary R. Hafer, Esq.
Cooley LLP
500 Boylston St., 14th Fl.
Boston, MA 02116

24cr10322

      Re:    United States v. Kenneth Fishberger
             Criminal No.

Dear Attorney Hafer:

The Acting United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Kenneth Fishberger ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    <u>Change of Plea</u>

Defendant will waive Indictment and plead guilty to Count One of the Information: conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. Defendant admits that Defendant committed the crime specified in this count and is in fact guilty.

Defendant agrees to venue of the case in the District of Massachusetts. Defendant knowingly waives any applicable statute of limitations and any legal or procedural defects in the Information.

Defendant agrees that the facts set forth in the attached Agreed Statement of Facts are true and accurate.

    2.    <u>Penalties</u>

Defendant faces the following maximum penalties: incarceration for ten years; supervised release for three years; a fine of $250,000 or twice the gross pecuniary gain or loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

1

3. <u>Sentencing Guidelines</u>

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 17:

a) Defendant's base offense level is 6 because the statutory maximum term of imprisonment of conspiracy to commit health care fraud is less than twenty years (USSG § 2B1.1(a)(2));

b) Defendant's offense level is increased by 14 levels because Defendant caused a loss of more than $550,000 and less than $1.5 million (USSG § 2B1.1(b)(1)(H));

c) Defendant's offense level is increased by 2 levels because Defendant abused a special skill (USSG § 3B1.3);

d) Defendant's offense level is decreased by 3 levels because Defendant has accepted responsibility for Defendant's crime (USSG § 3E1.1); and

e) Defendant's offense level is decreased by 2 levels because he has no criminal history points and otherwise meets the criteria to be considered a "zero point" offender (USSG § 4C1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crime to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4. <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

    a) incarceration at the low end of the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures;

    b) a fine within the Guidelines sentencing range as calculated by the Court at sentencing, excluding departures, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

    c) 12 months of supervised release;

    d) a mandatory special assessment of $100, which Defendant must pay to the Clerk of the Court by the date of sentencing;

    e) restitution of $342,876; and

    f) forfeiture as set forth in Paragraph 6.

Based on the factors set forth in 18 U.S.C. § 3553(a), Defendant is free to recommend whatever sentence he deems appropriate as to incarceration, fine, and supervised release. Defendant agrees with the U.S. Attorney's recommendation of the mandatory special assessment, restitution, and forfeiture.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

    a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

      b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

    6.    <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

      a. $48,000 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $48,000 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crime to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control or has had any legal or beneficial interest.  Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney.  Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.  Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.  Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on

the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9. Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*   \*   \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Howard Locker.

Sincerely,

JOSHUA S. LEVY
Acting United States Attorney

By: _____
Kelly Begg Lawrence
Chief, Health Care Fraud Unit
Mackenzie A. Queenin
Deputy Chief, Health Care Fraud Unit

_____
Howard Locker
Assistant U.S. Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime I am pleading guilty to, and the maximum penalties for that crime. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charge against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offense. I believe this Agreement is in my best interest.

*Dr. Kenneth Fishberger*
Kenneth Fishberger
Defendant

Date: October 22, 2024

I certify that Kenneth Fishberger has read this Agreement and that we have discussed what it means. I believe Kenneth Fishberger understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

*Zachary R. Hafer*
Zachary R. Hafer, Esq.
Attorney for Defendant

Date: October 22, 2024

Agreed Statement of Facts

Defendant agrees to the accuracy of this statement of facts.

From in or about June 2013 continuing into December 2019, Defendant knowingly and willingly conspired and agreed with his co-conspirators to commit health care fraud, in violation of 18 U.S.C. § 1349, by falsifying patient diagnoses when ordering medically unnecessary testing, thereby causing the submission of materially false and fraudulent claims for those services to be submitted in exchange for kickbacks. Defendant did so by receiving kickbacks in cash generally every month based on the number of patients referred for transcranial Doppler ("TCD") ultrasounds the prior month; text messaging concerning the calculation and payment of kickbacks; and including false diagnoses on orders for diagnostic testing so that federal health care programs would pay for these tests. Medicare is a "health care benefit program" of the United States as defined in 18 U.S.C. § 24(b) and a "Federal health care program" as defined in 42 U.S.C. §1320a-7b(f). Furthermore, Medicare is a health care benefit program and federal health care program affecting commerce.

During the relevant period, Defendant was a medical doctor licensed in the state of New York who practiced internal medicine in and around Port Jefferson, New York.

Beginning in or around June 2013, Defendant entered into an arrangement with Coconspirator Company Manager ("CC-1"), who was the head salesperson for a medical diagnostics company ("TCD Company"). TCD Company provided diagnostic imaging services. TCD Company was based in Long Island, New York, but operated in multiple states, including Massachusetts.[1] The arrangement between Defendant and TCD Company involved Defendant ordering TCD ultrasounds that TCD Company personnel performed in Defendant's office. TCD Company billed the claims to the patient's insurer(s). CC-1 paid Defendant approximately $100 per TCD ultrasound order or prescription that Defendant signed. CC-1 and another TCD Company salesperson ("CC-2") generally paid these kickback amounts in cash.

To order TCD ultrasounds, CC-1 provided Defendant with specific diagnoses code to use, including for medical conditions called vertebro-basilar insufficiency or vertebrobasilar syndrome (collectively, "VBI") and occlusion and stenosis of one or both carotid arteries. Defendant signed many prescriptions and orders in which Defendant or an TCD Company technician indicated or checked off that a given patient had one of those conditions even though Defendant had not and did not diagnose the patients with it. Defendant approved ordering many TCD ultrasounds that contained the false diagnosis because of the illegal inducement from CC-1 and TCD Company. Without these specific diagnoses, insurance companies generally would not pay TCD Company's TCD ultrasound claims.

Defendant signed prescriptions and orders for approximately 480 TCD ultrasounds, which TCD Company used to fraudulently bill insurance companies approximately $891,978. Insurance companies paid approximately $342,876 for these fraudulent claims. In total,

---

[1] At some point during the conspiracy period, Defendant became aware that PJS provided imaging services in Massachusetts.

Defendant received from CC-1 and TCD Company approximately $48,000 in cash kickback payments.

In furtherance of the charged conspiracy, (1) on or around September 10, 2013, CC-1 exchanged text messages with an individual who worked in Defendant's office about delivering a cash kickback payment, including for TCD ultrasounds Defendant ordered from TCD Company; (2) on or around March 6, 2014, CC-1 sent text messages to the same individual who worked in Defendant's office that Defendant should "write TCD for migraines and headaches which is transient cerebral ischemia on exam request. Also SSR for all diabetics. They have the same value as a carotid. 93 vs 140 last month"; (3) on or about March 14, 2016, CC-1 delivered a cash kickback payment to Defendant, including for TCD ultrasounds Defendant ordered from TCD Company; (4) on or about April 12, 2017, Defendant ordered a TCD ultrasound for a patient with the initials J.B., which included the false diagnosis of VBI; (5) on or about June 1, 2017, CC-2 delivered a cash kickback payment to Defendant, including for TCD ultrasounds Defendant ordered from TCD Company; and (6) on or about December 19, 2019, CC-1 made a cash kickback payment to Defendant of approximately $900 near a Starbucks, including for TCD ultrasounds Defendant ordered from TCD Company.

The preceding statement is a summary made for the purpose of assuring the Court of the factual basis for Defendant's guilty plea. It does not include all facts known to Defendant or the government regarding his illegal activities. Defendant acknowledges and agrees with this statement knowingly and voluntarily because he is in fact guilty of the crime charged.